USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _4/29/2024_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
S.G. and M.G., on behalf of themselves
and others similarly situated,

                               Plaintiffs,


              -against-                                                 23-cv-2866 (LAK)


BANK OF CHINA LTD., BANK OF CHINA U.S.A.,
BOC INTERNATIONAL HOLDINGS LTD., BOCI
COMMODITIES & FUTURES (USA) LLC, CME
GROUP INC., and NEW YORK MERCANTILE
EXCHANGE, INC.,

                               Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## MEMORANDUM OPINION


Appearances:


        John Y. Tang
        Wenjie Cai
        TANG PC
        *Attorneys for Plaintiffs*

        Brian S. Weinstein
        James I. McClammy
        DAVIS POLK & WARDWELL LLP
        *Attorneys for Defendants Bank of China U.S.A. and*
        *BOCI Commodities & Futures (USA) LLC*

        Shari A. Brandt
        Matthew M. Riccardi
        PERKINS COIE LLP
        *Attorneys for Defendants CME Group Inc. and New*
        *York Mercantile Exchange, Inc.*

L<small>EWIS</small> A. K<small>APLAN</small>, *District Judge.*

This putative class action concerns the marketing, sale, and management of Crude Oil Treasure ("COT"), a derivative investment product. Plaintiffs allege violation of the Commodity Exchange Act ("CEA") and various state law claims. Before the Court are the motions to dismiss of defendants Bank of China U.S.A. ("BOC USA"), Bank of China Commodities & Futures (USA) LLC ("BOCI USA" and, together with BOC USA and defendants BOCI International Holdings Ltd. and Bank of China Ltd., "BOC Group"), CME Group Inc. ("CME Group"), and New York Mercantile Exchange, Inc. ("NYMEX" and, together with CME Group, "CME").[1] For the reasons explained below, the motions are granted.

*Facts*

Plaintiffs S.G. and M.G. allege that they purchased COT from defendant BOC Group and were damaged thereby.[2]

COT is a financial derivative, a type of financial instrument whose value is derived from and depends upon an underlying asset, in the case of COT West Texas Intermediate ("WTI") crude oil futures contracts. Although their prices are closely related, COT and WTI futures contracts differ in at least two important respects. First, unlike WTI futures contracts, COT does not contemplate the future physical delivery of the underlying commodity, crude oil. And, second, while WTI futures contracts are publicly traded on the New York Mercantile Exchange, which is

---

[1]

Dkts 40, 42, 46.

[2]

Dkt 1 at ¶ 9.

The Court has permitted plaintiffs to proceed pseudonymously until the determination of all pending motions to dismiss. Dkt 51.

owned and operated by defendant CME, COT is purchased from its creator, defendant BOC Group.[3]

The complaint alleges that BOC Group fraudulently misrepresented COT to prospective customers, mismanaged COT, and misappropriated customer funds. All told, the complaint states, COT customers lost more than $1.6 billion.[4] Specifically, plaintiffs assert eight causes of action. Counts One through Six are bought against BOC Group and allege violation of the CEA, false advertising, fraud, conspiracy to defraud, breach of contract, and breach of fiduciary duty, respectively. Count Seven is brought against both BOC Group and CME and alleges negligence. Last, Count Eight alleges that CME aided and abetted BOC Group.[5]

*Discussion*

## I.    *Legal Standard*

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts "to state a claim to relief that is plausible on its face."[6] In most cases, a claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[7] This pleading requirement is satisfied by "a short

---

[3]    Dkt 1 at ¶¶ 1, 18, 41.

[4]    Dkt 1 at ¶¶ 34, 56, 84, 93, 95.

[5]    Dkt 1 at ¶¶ 80–124.

The complaint does not specify precisely what wrongful act CME aided and abetted. Plaintiffs' opposition to CME's motion to dismiss clarifies that the claim alleges "aiding and abetting common law fraud." Dkt 54 (Pls. Mem.) at 1.

[6]    *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[7]    *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

4

and plain statement of the claim showing that the pleader is entitled to relief."[8]   In addition, allegations of fraud must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b).  Rule 9(b) requires plaintiffs to "state with particularity the circumstances constituting fraud."[9] To satisfy Rule 9(b), "a complaint [must] (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."[10]

When considering a motion to dismiss, a court must "accept as true all factual allegations and draw from them all reasonable inferences" in the plaintiff's favor, but it is "not required to credit conclusory allegations or legal conclusions couched as factual allegations."[11]

## II.    Claims Against BOC USA and BOCI USA Fail Under Rules 8 and 9

BOC USA and BOCI USA contend that the complaint is devoid of specific allegations against them and that it therefore falls short of the Rule 8(a) and Rule 9(b) pleading standards.  "Although [Rule] 8 does not demand that a complaint be a model of clarity or exhaustively present the facts alleged, it requires, at a minimum, that a complaint *give each*

---

[8]     Fed. R. Civ. P. 8(a)(2).

[9]     Fed. R. Civ. P. 9(b).

[10]    *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (internal quotation marks omitted).

[11]    *Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019) (quoting *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014)).

*defendant* 'fair notice of what the plaintiff's claim is and the ground upon which it rests.'"[12]  Further,

plaintiffs themselves acknowledge that "Rule 9(b) requires [them] to plead facts from which fraud

may be reasonably inferred *as to each defendant*."[13]  The complaint meets neither standard.[14]

The complaint contains insufficient allegations specific to either BOC USA or BOCI

USA.  Instead, it makes allegations against "BOC Group," a term it defines to include four different

BOC-affiliated entities.[15]  Generally, such group pleading is impermissible under Rule 8 because

it fails to give defendants notice of what each is alleged to have done.[16]  Where, as here, "a

complaint lumps all the defendants together in each claim and provides no factual basis to

distinguish their conduct, it fails to satisfy this minimum standard."[17]  And, relevant here, "[t]he fact

---

[12]

*Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (summary order) (emphasis added) (quoting *Ferro v. Ry. Express Agency, Inc.*, 296 F.2d 847, 851 (2d Cir. 1961) and citing *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)).

[13]

Dkt 52 (Pls. Mem.) at 19 (emphasis added); *see Simon v. Castello*, 172 F.R.D. 103, 106 (S.D.N.Y. 1997) ("[W]here multiple Defendants are alleged to have committed fraud, the Complaint must allege *specifically* the fraud perpetrated by *each defendant*." (emphasis added) (internal quotation marks omitted)); *Dannenberg v. Dorison*, 603 F. Supp. 1238, 1241 (S.D.N.Y. 1985).

[14]

The briefing does not address to which claims Rule 9(b) applies.  Rule 9(b) applies to at least Counts One, Three, Four, and Eight.  *See Silvercreek Mgmt., Inc. v. Citigroup, Inc.*, 248 F. Supp. 3d 428, 447 (S.D.N.Y. 2017).  However, the application of Rule 9(b) to all or any of these claims is not necessary to the Court's holding because each claim fails for other reasons besides, as is explained in this opinion.

[15]

Dkt 1 at ¶ 14.

[16]

*See Atuahene*, 10 F. App'x at 34; *Ferro*, 296 F.2d at 851.

[17]

*In re Platinum-Beechwood Litig.*, 427 F. Supp. 3d 395, 438 (S.D.N.Y. 2019) (internal quotation and alteration marks omitted) (quoting *Atuahene*, 10 F. App'x at 34); *accord In re Zinc Antitrust Litig.*, 155 F. Supp. 3d 337, 384 (S.D.N.Y. 2016) ("*Twombly* makes clear that at the pleading stage . . . each defendant is entitled to know how he is alleged to have

that . . . separate legal entities may have a corporate affiliation . . . does not alter this pleading requirement."[18]

Counts One, Three, Four, and Eight fall short also of Rule 9(b) because they do not support an inference of fraud as to *each* of BOC USA and BOCI USA.  That is, the allegations do not, among other necessary things, specify or detail fraudulent statements made by each of the defendants.[19]  "[L]umping all [BOC-affiliated] defendants together fails to satisfy [Rule 9(b)'s] particularity requirement."[20]

The complaint does make a handful of allegations against BOC USA and BOCI USA by name, but these allegations do not satisfy the applicable pleading standards because they name several BOCI-affiliated defendants together and without differentiation.[21]  Where, as here, a complaint "list[s] . . . the defendants['] name[s] individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these [defendants] toz ascertain what particular

_____

conspired, with whom and for what purpose.  Mere generalizations as to any particular defendant — or even defendants as a group — are insufficient." (citation omitted)).

[18]

*In re Zinc Antitrust Litig.*, 155 F. Supp. 3d at 384; *see id.* ("Nor is it sufficient for plaintiffs to simply state in conclusory terms that separate legal entities are 'sometimes collectively referred to' by a shared generic name." (citation omitted)); *see also Edmar Fin. Co., LLC v. Currenex, Inc.*, No. 21-cv-6598 (LAK), 2023 WL 3570017, at *23 (S.D.N.Y. May 18, 2023) ("[T]he amended complaint fails to allege adequately that corporate formalities have been ignored such that the Court should disregard the legal separateness of the affiliated entities.").

[19]

*See Rombach*, 355 F.3d at 170; *Dannenberg*, 603 F. Supp. at 1241.

[20]

*In re Crude Oil Commodity Litig.*, No. 06-cv-6677 (NRB), 2007 WL 1946553, at *6 (S.D.N.Y. June 28, 2007).

[21]

*E.g.*, Dkt 1 at ¶¶ 101 ("BOC, BOC USA, BOCI and BOCI USA colluded . . . ."), 102 ("BOC, BOC USA, BOCI and BOCI USA willfully and fully . . . .").

. . . acts they are alleged to have committed."[22]  Plaintiffs fail to specify which BOCI entity was responsible for what conduct.[23]

Plaintiffs respond by pointing out that "pleading requirements may be relaxed when the information is exclusively within the defendant's knowledge so long as the factual basis for allegations based upon information and belief are adequately set forth."[24]  This is true[25] but beside the point because the complaint fails to plead *any* allegations upon information and belief that are specific to either BOC USA or BOCI USA.  Accordingly, even if the exception to Rule 9(b) on which plaintiffs rely were applicable — a question the Court need not decide — it would not save the complaint.

The complaint fails to state a claim upon which relief can be granted against either BOC USA or BOCI USA.

### III.     *Claims Against CME and NYMEX*

Defendant CME[26] argues that is immune from plaintiffs' claims as a self-regulatory

---

[22]

*Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (citing *Atuahene*, 10 F. App'x at 34).

[23]

*See* Dkt 47 at 8.

[24]

Dkt 52 at 19 (Pls. Mem.) (citing *Luce v. Edelstein*, 802 F.2d 49, 54 n.1 (2d Cir. 1986)).

[25]

*Luce*, 802 F.2d at 54 n.1 (Rule 9(b)'s general prohibition of pleading based upon information and belief is relaxed as to "matters peculiarly within the opposing party's knowledge.").

[26]

The complaint refers to CME Group Inc. and New York Mercantile Exchange, Inc. "collectively as Defendant CME."  Dkt 1 at ¶ 17.  For the reasons explained below, the Court need not decide whether such a group pleading is permissible.

organization ("SRO").  "An SRO and its officers are entitled to absolute immunity when they are, in effect, acting under the aegis of their regulatory duties."[27]  An SRO thus is entitled to absolute immunity when it fills a role that otherwise would have been taken by a government agency and "engages in conduct consistent with the quasi-governmental powers delegated to it."[28]

CME is an SRO immune from suit.[29]  Each of the complaint's allegations of "Defendant CME's Wrongdoing[]" springs from activity core to CME's regulatory function.[30]  For example, the complaint alleges that CME's anti-money laundering and know your customer programs "should [have] but failed to detect . . . Defendant BOC Group's fraudulent acts, including its concealment of the true identity of the COT customers and shell accounts for the COT oil futures contracts."[31]  But this activity falls within the category of "general regulatory oversight over exchange members," which, the Court of Appeals has held, is entitled to immunity as a quasi-governmental function.[32]  Similarly, the complaint alleges that "CME announced [a] new policy that

---

27

       *City of Providence, Rhode Island v. Bats Glob. Markets, Inc.*, 878 F.3d 36, 46 (2d Cir. 2017) (internal quotation marks omitted).

28

       *D'Alessio v. New York Stock Exch., Inc.*, 258 F.3d 93, 106 (2d Cir. 2001).

29

       Dkt 1 at ¶¶ 15, 17, 19, 22; CFTC, Designated Contract Markets (DCM), *available at* https://www.cftc.gov/IndustryOversight/IndustryFilings/TradingOrganizations?page=1 (last accessed April 2024); Gideon Mark, *Spoofing and Layering*, 45 J. CORP. L. 399, 459 (2020) ("Self-regulation in the futures markets primarily occurs under the umbrella of CME Group, Inc., a publicly traded entity that operates SRO[] . . . NYMEX.").

30

       *See* Dkt 1 at ¶¶ 58–62.

31

       Dkt 1 at ¶ 58.

32

       *Bats Glob. Markets, Inc.*, 878 F.3d at 46.

allow[ed] . . . . the first-ever negative price for oil future contract[s],"[33] but such a rule change is "inextricably intertwined with [CME's] role as a regulator" and thus is covered by absolute immunity.[34]

Plaintiffs offer two responses, neither of which is persuasive. First, they assert that their "claim for negligence . . . has little or no connection with the regulatory responsibilities delegated to [CME]."[35] In addition to being conclusory, this assertion is contradicted by the complaint itself, as explained in the preceding paragraph. Second, plaintiffs assert, without citation to authority, that their "allegation of bad faith negates [CME's claim of immunity] because discharging regulatory responsibility cannot be in bad faith."[36] But such an allegation of bad faith — if it were pled sufficiently, which it is not[37] — would be of no moment because "immunity depends only on whether specific acts and forbearances were incident to the exercise of regulatory power, and not on the propriety of those actions or inactions."[38]

---

[33]

Dkt 1 at ¶ 50.

[34]

*Bats Glob. Markets, Inc.*, 878 F.3d at 46 (quotation and alteration marks omitted).

[35]

Dkt 54 (Pls. Mem.) at 10–11.

[36]

Dkt 54 (Pls. Mem.) at 11.

[37]

*See* Dkt 55 (CME Reply) at 3–4.

[38]

*In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 98 (2d Cir. 2007) (emphasis omitted); *see In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 428, 448 (S.D.N.Y. 2013) ("In assessing the applicability of absolute immunity to a given claim, the SRO's motive and reasonableness are not considered.").

*IV.   Leave To Amend Is Denied*

"Plaintiffs . . . request leave to amend the Complaint" to the "extent that any portion of any claim is found to be lacking in any respect."[39]  As a general matter, leave to amend is to be "freely give[n]"[40] "unless . . . the amendment would be futile."[41]  "Proposed amendments are futile if they would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6)."[42]  A "plaintiff need not be given leave to amend if it fails to specify . . . how amendment would cure the pleading deficiencies in its complaint."[43]

Plaintiffs application for leave to amend the complaint is denied because they give no indication of how amending would cure the complaint's numerous deficiencies.  Indeed, in addition to their general request to amend quoted above, plaintiffs state only that they would amend by "adding" claims against BOC Group for "aiding and abetting breach of contract or tortious interference with contract" and "aiding and abetting breach of fiduciary duty."[44]  But adding such

---

[39]    Dkt 52 (Pls. Mem.) at 1; Dkt 54 (Pls. Mem.) at 1.

[40]    Fed. R. Civ. P. 15(a)(2).

[41]    *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 191 (2d Cir. 2001).

[42]    *Thea v. Kleinhandler*, 807 F.3d 492, 496–97 (2d Cir. 2015) (internal quotation marks omitted).

[43]    *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (affirming district court's denial of application for leave to amend made in plaintiff's opposition to defendant's motion to dismiss complaint); *see id*. at 506 ("A counseled plaintiff is not necessarily entitled to a remand for repleading whenever he has indicated a desire to amend his complaint, notwithstanding the failure . . . to make a showing that the complaint's defects can be cured." (quoting *Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006) (per curiam) (modification in original))).

[44]    Dkt 52 (Pls. Mem.) at 21–22.

11

claims would do nothing to save the insufficiently pled claims which the Court dismisses here.

Further, these new claims would be certain to fail. Plaintiffs' first proposed claim — which is really two claims, one for "aiding and abetting breach of contract" and another for "tortious interference with contract" — lacks merit. Under New York law, "no cause of action exists for aiding and abetting a breach of contract."[45] In addition, the tortious interference with contract claim fails because it does not allege, at the least, two of the tort's five elements, the "defendant's intentional procurement of [a] *third-party's* breach of the contract without justification" and "actual breach of the contract."[46]

Likewise, permitting plaintiffs to add their second proposed claim — for "aiding and abetting breach of fiduciary duty" — would be futile because it would not allege an underlying breach of fiduciary duty. Under New York law, "[a] plaintiff seeking to establish a cause of action for aiding and abetting a breach of fiduciary duty must show," among other things, "the existence of a . . . violation by the primary (as opposed to the aiding and abetting) party."[47] Plaintiffs do not

---

[45]

*Pomerance v. McGrath*, 124 A.D.3d 481, 484, 2 N.Y.S.3d 436 (1st Dep't 2015); *see, e.g.*, *Purvi Enterprises, LLC v. City of New York*, 62 A.D.3d 508, 509, 879 N.Y.S.2d 410 (1st Dep't 2009); *Markowits v. Friedman*, 144 A.D.3d 993, 996, 42 N.Y.S.3d 218 (2d Dep't 2016).

Even if this were not the case and such a cause of action existed, plaintiffs' proposed claim would still be futile because they do not allege the underlying tort of breach of contract, as is required by state law. *See Land v. Forgione*, 177 A.D.3d 862, 864, 114 N.Y.S.3d 464, 466 (2d Dep't 2019) (affirming denial of leave to amend).

[46]

*Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401–02 (2d Cir. 2006) (quoting *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 424, 646 N.Y.S.2d 76, 82 (1996)).

[47]

*Samuel M. Feinberg Testamentary Tr. v. Carter*, 652 F. Supp. 1066, 1082 (S.D.N.Y. 1987) (quoting *ITT v. Cornfeld*, 619 F.2d 909, 922 (2d Cir. 1980)); *accord Design Strategy, Inc. v. Davis*, 469 F.3d 284, 303 (2d Cir. 2006).

12

do so.

Leave to amend the complaint as to the claims against CME is denied also because doing so would be futile in light of CME's absolute immunity.

For these reasons, leave to amend is denied.[48]

### Conclusion

For the forgoing reasons, defendants' motions to dismiss[49] are granted and plaintiffs' requests for leave to amend[50] are denied.

SO ORDERED.

Dated:        April 29, 2024

_____
Lewis A. Kaplan
United States District Judge

---

[48]
Separate and apart from these reasons, leave to amend Count One, which alleges a violation of the CEA, would be futile because such a claim is time-barred. *See* 7 U.S.C. § 25(c) (two-year statute of limitations); *Levy v. BASF Metals Ltd.*, 917 F.3d 106, 108 (2d Cir. 2019) (per curiam) (an action arises under the CEA with the "discovery of the injury, not discovery of the other elements of a claim"); Dkt 1 at ¶ 67 (plaintiffs learned of their injuries on April 20, 2020, but they did not bring suit until nearly three years later).

[49]
Dkts 40, 42, 46.

[50]
Dkts 52, 54.